528 A.2d 1090

Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellant *v.* Adolph F. Fellmeth, Jr., Appellee.

Submitted on briefs June 8, 1987, to Judges CRAIG and DOYLE, and Senior Judge KALISH, sitting as a panel of three.

*Harold H. Cramer*, Assistant Counsel, with him, *Spencer A. Manthorpe*, Chief Counsel, *Jay C. Waldman*, General Counsel, for appellant.

*Adolph F. Fellmeth, III,* for appellee.

OPINION BY JUDGE CRAIG, July 31, 1987:

The Pennsylvania Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an order of the Montgomery County Court of Common Pleas reversing DOT's suspension of Adolph F. Fellmeth, Jr.'s driver's license.

The question is whether a motorist's declining to submit to a second breathalyzer test, when the breathalyzer machine functioned properly the first time except for a printing error, constitutes a "refusal" to take a chemical test for blood alcohol content in violation of the statutory duty to submit to such a test.

Fellmeth, arrested for driving under the influence of alcohol after he failed a field sobriety test, assented to a breathalyzer alcohol test. The arresting officer, a certified breathalyzer operator, administered the test in the presence of two other officers. The breathalyzer machine registered a reading of .201% on the liquid crystal display located on the machine for the test of Fellmeth's breath, and all three officers observed that reading.

However, the breathalyzer machine's printer malfunctioned in printing the test reading on a ticket that it produced as a record of the test. The printer properly printed a "purge" reading of .88 and above that a "sample" reading of .00,[1] but the printer did not then advance the paper. That malfunction caused the "test" reading of .20 to be superimposed on the sample reading.

---

[1] According to the testimony of the officer who administered the test, the "purge" reading indicates that the machine's lights are functioning properly; the "sample" reading indicates whether any traces of alcohol are left in the machine, and the "test" reading shows the results of the analysis of the breath of the person who is being tested.

The officer administering the test advised Fellmeth of the printer malfunction and requested that he submit to another test. Fellmeth, expressing certain confused notions of "double jeopardy," declined, despite repeated warnings from the police that his failure to submit to the second test could result in the suspension of his driving privileges. DOT, pursuant to section 1547(b) of the Vehicle Code, 75 Pa. C. S. §1547(b), suspended Fellmeth's operating privileges for one year.[2]

Fellmeth appealed the decision of DOT to the Court of Common Pleas of Montgomery County. The court reversed the suspension, finding that Fellmeth had assented to a valid and correct breathalyzer test and concluding, therefore, that he had not violated his statutory duty. This appeal followed.[3]

Section 1547(a) of the Vehicle Code, 75 Pa. C. S. §1547(a), provides as follows:

Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to

---

[2] Section 1547(b) of the Vehicle Code provides, in part:
(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the test shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

[3] To sustain a suspension under section 1547(b) of the Code, the Commonwealth must prove that the driver (1) was placed under arrest for driving while under the influence of alcohol; (2) was requested to submit to a breathalyzer test; (3) refused to do so; and (4) was warned that his license would be revoked if he refused to take the test. *Capozzoli Appeal*, 63 Pa. Commonwealth Ct. 411, 437 A.2d 1340 (1981). Only the third element is involved in this appeal.

have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining if the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a motor vehicle:

(1) while under the influence of alcohol or a controlled substance or both; or

(2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.

The Pennsylvania Supreme Court recently construed section 1547(a) in the context of a request for a second breath test in the case of *Department of Transportation v. McFarren,* 514 Pa. 411, 525 A.2d 1185 (1987) (plurality opinion), *application for reargument and clarification denied September 30, 1987.* In *McFarren,* a motorist did not comply with a police request that he take a second breath test after the breathalyzer machine functioned properly during the first test. Justice ZAPPALA, writing for the plurality, concluded that, even though section 1547(a) provides that a person who operates a motor vehicle in the Commonwealth shall be deemed to have given consent to "one or more" chemical tests for a determination of blood alcohol content, the "search" that such a test entails is still subject to art. 1, §8 of the Constitution of the Commonwealth.[4]

---

[4] Art. 1, §8 of the Pennsylvania Constitution provides as follows:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Consequently, the initial intrusion must be supported by probable cause and conducted in a reasonable manner.

As to the propriety of a second intrusion, the *McFarren* opinion stated:

> In order to justify a second intrusion, the police officer must establish circumstances which support the reasonableness of a second search. To hold otherwise would subject an individual to 'unreasonable searches and seizures' in violation of Art. 1, §8 of our Constituion. A second test may be proper if the first test was inconclusive due to faulty equipment or faulty performance by the individual.

*McFarren*, 514 Pa. at 417-18, 525 A.2d at 1188. The opinion further stated that, after a motorist has completed one breathalyzer test, for the police to require a second test "solely to enhance the evidence and guarantee a conviction is not 'reasonable' under Art. 1, §8 of our Constitution." *Id.* at 418, 525 A.2d at 1188.[5] Therefore, when a motorist already has performed one valid test, his declining to perform a second is not a refusal to submit to chemical testing within the meaning of section 1547(b).

Because the trial court, Judge CORSO, made the factual finding that the first test conducted on Fellmeth was a valid breathalyzer test, he concluded that Fellmeth's failure to submit to a second test was not a violation of section 1547. That conclusion is consistent with

---

[5] *Compare Department of Transportation, Bureau of Traffic Safety v. Fullerton*, 31 Pa. Commonwealth Ct. 609, 377 A.2d 1024 (1977), where this court upheld the suspension of a motorist's license for his refusing to submit to a second breathalyzer test after the first was conducted with the machine improperly set. The court reasoned that in reality no test occurred in the first instance because the machine could not have functioned. 31 Pa. Commonwealth Ct. at 614, 377 A.2d at 1027.

the reasoning of *McFarren*. Thus the ultimate question for review in this case is the narrow one of whether the substantial evidence supports the factual finding that the first test performed on Fellmeth was a valid test, despite the machine's printing error.[6]

In making his finding, Judge CORSO stated that "[i]n this case a 'valid and correct' breathalyzer test was performed. Although the printer failed to properly advance the paper, the police officer testified that he could read .20 test printout and he so testified at the Preliminary Hearing on the criminal charge." In addition, the record discloses that a proper waiting period elapsed before the test was performed, that a certified operator conducted the test, that the machine was calibrated correctly and was properly set, that the liquid crystal display registered a test reading, and that the three officers present observed that reading. Also, the printer malfunction and the correct reading were indicated in a handwritten notation on the printed ticket and the notation was signed by one of the officers. All of this evidence provides substantial support for Judge CORSO's finding that the first test performed by Fellmeth was a valid test.[7]

The desire of the police to have the evidence of Fellmeth's breath test recorded in the best possible form is understandable. However, that desire to enhance evidence, without more, does not undercut the

---

[6] Our scope of review of a common pleas court decision in a license suspension case is limited to determining whether the court made findings of fact unsupported by substantial evidence, committed an error of law, or abused its discretion. *Department of Transportation, Bureau of Driver Licensing v. LaSalle*, 102 Pa. Commonwealth Ct. 422, 520 A.2d 131 (1987).

[7] DOT adopted Regulation 77.24 (67 Pa. Code §77.24), effective December 22, 1984, which required the administration of two (2) alcohol tests. Because that regulation was promulgated subsequent to this occurrence, it is inapplicable.

fact that Fellmeth complied with his statutory duty by submitting to a valid test in the first instance.

Accordingly, we affirm.

### ORDER

Now, July 31, 1987, the order of the Court of Common Pleas of Montgomery County, at No. 84-18207, dated June 27, 1985, is affirmed.